# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

UNITED STATES OF AMERICA,

    v.

KASEAN TILLMAN,

CASE NO.: 2:17-cr-8

## O R D E R

For the reasons set forth below and at the June 21, 2017, hearing, the Court **GRANTS as unopposed** Defendant's Motion for Release of <u>Brady</u> Materials, (doc. 40), **DISMISSES as moot** Defendant's Motion for Jencks Act Material, (doc. 41), **DISMISSES as moot** Defendant's Motion to Preserve Evidence, (doc. 42), **GRANTS** Defendant's Motion for Discovery and Inspection, (doc. 43), and **DISMISSES as moot** Defendant's Motion for <u>Jackson-Denno</u> Hearing, (doc. 44).

## BACKGROUND

In this action, the Government charged Defendant Kasean Tillman and a co-defendant with: conspiracy, in violation of 18 U.S.C. § 371; manufacturing counterfeit obligations, in violation of 18 U.S.C. § 471; and uttering counterfeit obligations, in violation of 18 U.S.C. § 472. (Doc. 1.) Defendant and the Government entered into a plea agreement on April 27, 2017. (Doc. 45.) Pursuant to that plea agreement, at the May 12, 2017, Rule 11 Hearing, Defendant entered a plea of guilty to Count Two of the Indictment, manufacturing counterfeit obligations, in violation of 18 U.S.C. § 471.

Prior to his entry of a guilty plea, Defendant, through counsel, filed a number of pretrial Motions. Defendant's counsel and the Assistant United States Attorney filed a Joint Statement

Regarding Motions in need of resolution prior to the sentencing hearing. (Doc. 57.) As a result of the parties' joint filing, the Court conducted a hearing on Defendant's Motions on June 21, 2017, at which Defendant, Defendant's counsel, the Assistant United States Attorney, and United States Secret Service ("USSS") Special Agent Matthew Britsch appeared. At the hearing, the Court discussed the Joint Statement with counsel, as well as Defendant's Motions. The Court heard argument from counsel. Defendant's counsel expounded upon the arguments raised in his Motions, and the Assistant United States Attorney responded in opposition to Defendant's arguments. The parties did not present any testimony or documentary evidence.

## DISCUSSION

### I.      Defendant's Motion for Release of <u>Brady</u> Materials

The Court **GRANTS as unopposed** Defendant's Motion for Release of <u>Brady</u>[1] Materials. (Doc. 40.) As counsel noted, <u>Brady</u> issues are never moot, and the Government has a continuing obligation to provide a defendant with any and all evidence material to the defendant's guilt or punishment. The Government's <u>Brady</u> obligations continue through the time of the sentencing hearing. <u>See</u> <u>East v. Scott</u>, 55 F.3d 996, 1002–04 (5th Cir. 1995) (discussing a claimed <u>Brady</u> violation during the sentencing phase). This ruling is no indication that the Government has not complied or will not continue to comply with its obligations under <u>Brady</u> in this or any other case.

---

[1]      <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), in which the United States Supreme Court held that the suppression of evidence by the prosecution favorable to the accused upon request violates due process where the evidence is material to guilt or punishment, regardless of the good or bad faith of the prosecution.

## II. Defendant's Motion for Jencks Act Material

The Court **DISMISSES as moot** Defendant's Motion for Jencks Act Material.[2] (Doc. 41.) Defendant's counsel stated during the hearing that he assumed there were other reports of the Government's witnesses, but, after speaking with USSS Agent Britsch, he knows there are no reports concerning the examination of any of the currency at issue in this case. Additionally, the Assistant United States Attorney stated that the Government already has produced the statements of any of its witnesses who will testify during the sentencing hearing, in accordance with the United States Attorney's Office's practice of producing these statements well before trial.

## III. Defendant's Motion to Preserve Evidence

The Court **DISMISSES as moot** Defendant's Motion to Preserve Evidence. (Doc. 42.) All parties are well aware of their duty to preserve evidence, and Defendant has not made any specific showing that any items material to the defense or prosecution of this case are in danger of being destroyed. The Assistant United States Attorney represented that the counterfeit currency it has in its possession, as well as the other materials relevant to this prosecution, shall remain in the Government's possession until the resolution of this case.

## IV. Defendant's Motion for Discovery and Inspection

The Court **GRANTS** Defendant's Motion for Discovery and Inspection, (doc. 43), for the reasons and in the manner set forth herein. Pursuant to Rule 16(E) of the Federal Rules of Criminal Procedure, the Government must, upon a defendant's request,

> permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or

---

[2] Jencks Act materials, generally, are statements and/or reports of governmental witnesses in a criminal prosecution brought by the United States. 18 U.S.C. § 3500.

portions of any of these items, if the item is within the government's possession, custody, or control and:

> (i) the item is material to preparing the defense;

> (ii) the government intends to use the item in its case-in-chief at trial; or

> (iii) the item was obtained from or belongs to the defendant.[3]

Here, Defendant specifically requests that he be allowed access to all counterfeit notes involved in this case that are in the Government's possession, whether the notes are in the USSS' office in this District or any other District.[4]  Defendant requests that he be allowed to inspect the counterfeit notes regardless of whether the Government intends to specifically rely on the particular counterfeit note during the sentencing proceedings.  Defendant's counsel states that, in addition to a physical inspection of the notes, he may need to have the confiscated counterfeit notes and materials subject to examination and forensic testing.[5]  The Defendant maintains that such access, inspection, and testing are material to the defense of this case.

---

[3]  The parties did not raise the issue of whether Rule 16 applies to information that is solely relevant to a sentencing proceeding.  The Eleventh Circuit Court of Appeals has indicated that this may be an open question.  See United States v. Baez-Arrogo, 553 F. App'x 922, 924 (11th Cir. 2014) ("[Defendant] does not cite to any authority for the proposition that it is a Rule 16 violation to disclose evidence relevant only to sentencing after a defendant has entered a guilty plea.  We need not decide this issue, however, because there was no substantial rights violation.").  However, other courts have found that Rule 16 does apply to the sentencing phase.  See, e.g., United States v. Catalan Roman, 376 F. Supp. 2d 108, 113 (D.P.R. 2005); United States v. Carucci, 183 F.R.D. 614 (S.D.N.Y. 1999).  Because the parties did not dispute the applicability of Rule 16 in this case, the Court need not address this issue.  Additionally, Defendant raised plausible arguments that the additional counterfeit notes could contain Brady material, and, as set forth above, Brady obligations continue through sentencing.

[4]  The counterfeit notes were the only evidence that Defendant raised at the Motions hearing.  While the Court is aware that some of the notes are located in Districts other than this District, the Government did not make any showing that it would be unduly burdensome to produce these notes.

[5]  The Government indicated that it would oppose any forensic testing request.  At this time, the Court does not have before it a motion for an appointment of expert or other motion regarding forensic testing.  Thus, the Court issues no opinion as to such a request.  The Court merely rules upon the request before it—for counsel to be able to inspect the counterfeit notes.

At the hearing, the Government responded that Defendant need not inspect the notes because it would rely only upon a limited number of notes at the sentencing hearing. The Government stated that it would rely upon the notes in its possession in this District, as well as other notes that are evidenced on Defendant's electronic devices. However, the Government stated that there were additional notes located in other Districts that Defendant participated in creating but that the Government did not intend to rely upon at the sentencing hearing. The notes located in this District have been available for inspection throughout this case. However, some of the notes evidenced on the electronic devices are not in this District, and thus, have not been made available for inspection.

Moreover, the hearing revealed that the Government and Defendant strongly disagree over what notes should be attributed to Defendant. While some of this disagreement is no doubt attributable to a lack of communication between counsel, there also appears to be a substantive disagreement over the scope of Defendant's involvement. Particularly given this disagreement, Defendant should at least have the opportunity to review all counterfeit notes which the Government contends he was involved in creating. Indeed, in some instances, the sentencing judge must review the counterfeit notes in order to assess a defendant's offense level. United States v. Miller, 77 F.3d 71, 75–77 (4th Cir. 1996) (vacating sentence and remanding for lower court to conduct a physical inspection of the counterfeit notes involved to assess applicability of U.S.S.G. § 2B5.1(b)(2)); see also United States v. Webb, 616 F.3d 605, 609 (6th Cir. 2010) (affirming sentence and approvingly stating "[a]t sentencing, the district court examined the bills and compared their appearance and feel to genuine bills[.]"); United States v. Wyjack, 141 F.3d

181, 184 (5th Cir. 1998) (vacating sentence and stating that on remand district court may consider, among other factors, physical inspection of counterfeit notes).[6]

Additionally, the Government is not the arbiter of what conduct the Court may consider at the sentencing hearing. As the parties acknowledged in the plea agreement, "[t]he Sentencing Guidelines are based on all of Defendant's relevant conduct, pursuant to U.S.S.G. § 1B1.3, not just the facts underlying the particular counts to which Defendant is pleading guilty." (Doc. 54, pp. 2–3.) When assessing Defendant's relevant conduct, the Court must consider "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." U.S.S.G. § 1B1.3(a)(1)(A). Further, the base offense level "shall be determined on the basis of . . . all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction[.]" U.S.S.G. § 1B1.3(a)(2). Importantly to this case, the Court must consider "all harm" that resulted from Defendant's acts and omissions, as well as "all harm that was the object of such acts or omissions." U.S.S.G. § 1B1.3(a)(3). Specifically, when determining a sentence for manufacturing counterfeit obligations, the Court will consider the face value of all of the counterfeit obligations attributable to Defendant. U.S.S.G § 2B5.1.

Even if the Government and Defendant had entered a stipulation as to the face value of the obligations or other aspects of Defendant's relevant conduct (which they have not), the Court would not be bound by that stipulation. See United States v. Bunkley, 398 F. App'x 523, 530 (11th Cir. 2010) ("The district court did not effectively breach [defendant's] plea agreement by

---

[6] The Eleventh Circuit has recognized that there is no Eleventh Circuit or Supreme Court precedent definitively requiring a sentencing court to review the counterfeit notes before imposing a Section 2B5.1 enhancement. United States v. Tidwell, 296 F. App'x 752, 757 (11th Cir. 2008). However, the Court proceeded under a "plain error" standard of review in Tidwell and by no means indicated that a Court should not inspect counterfeit notes at sentencing.

declining to accept the drug-quantity stipulation.  Nor did it err by refusing to accept blindly the stipulation in [defendant's] plea agreement and making factual findings to determine the basis for [defendant's] sentence. . . . Rather, the district court need only 'consider the stipulation, together with the results of the presentence investigation, and any other relevant information' in determining the factual basis for the sentence.'") (quoting <u>United States v. Forbes</u>, 888 F.2d 752, 754 (11th Cir. 1989)); <u>United States v. Velez</u>, 1 F.3d 386, 389 (6th Cir. 1993) (Sentencing Guidelines authorized district court to sentence defendant based on fraudulent check-cashing scheme's activities in several states, even though defendant had plea bargained on information charging defendant solely on basis of scheme's activities within a single state and parties entered stipulation to the same; activities in other states were part of same course of conduct).  Given the importance of the total loss amount to Defendant's Guideline range and the Court's role as the ultimate arbiter of that range, Defendant's counsel must be prepared to address all obligations, the manufacture of which Defendant "aided, abetted, counseled, commanded, induced, procured, or willfully caused."  In other words, because the Court may consider the totality of Defendant's conduct, counsel must be prepared to address the totality of that conduct.  To fulfill that obligation, counsel must have the opportunity to inspect all of the counterfeit notes that the Court may attribute to Defendant.

The Government indicated at the hearing that the counterfeit notes that it has not made available for inspection would not affect Defendant's Guidelines offense level.  In essence, it contends that the additional notes would not raise the total face value of the counterfeit items to an enhancement level beyond that already established by the notes that have been produced for inspection or that are proven by information contained on Defendant's electronic devices.[7]  Even

---

[7]  Section 2B5.1 provides for a one level increase if the total face value of the notes exceeded $2,500.00 but was less than $6,500.00.  If the total face value exceeded $6,500.00, the Court must refer to the Table

if this is accurate, Defendant still needs to inspect all of the notes.  As an initial matter, even if the additional notes did not alter the Guidelines range, the Court could still use the total face value to decide whether to sentence Defendant at the lower or upper end of that range. Moreover, just as the Government and Defendant cannot bind the Court's ultimate determination of Defendant's sentence, neither can the Guidelines.  As the Court emphasized at the Rule 11 hearing and the recent Motions hearing, while the sentencing judge will consult the Guidelines, the Guidelines are advisory.[8]  United States v. Booker, 543 U.S. 220, 245 (2005).  The Guidelines are but one factor the Court must consider under 18 U.S.C. § 3553.  The Court may not "presume" that a within-Guidelines sentence is appropriate but instead must "make an individualized assessment" of the appropriate sentence "based on the facts presented."  Gall v. United States, 552 U.S. 38, 50 (2007).  Thus, whether a portion of evidence will affect Defendant's Guideline range is not ultimately determinative of whether that evidence is discoverable.

For all of these reasons and for those stated at the hearing, the Court **HEREBY ORDERS** the Government to make available to Defendant for inspection any and all counterfeit obligations in its possession that reflect any acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by Defendant.  This production shall include any and all counterfeit obligations that were part of the same course of conduct or common scheme or plan as the offense of conviction, as well as any evidence of the harm that resulted from Defendant's acts or omissions or that was the object of Defendant's acts or

---

set forth in Section 2B1.1.  Section 2B1.1, in turn, provides for incremental offense level increases based on certain dollar amounts.

[8]  The parties acknowledged the advisory nature of the Guidelines in their Plea Agreement.  (Doc. 54, p. 2.)

omissions. The Government shall make the materials available for a reasonable inspection within the Southern District of Georgia within **fourteen (14) days** of the date of this Order.[9]

## V. Defendant's Motion for <u>Jackson-Denno</u> Hearing

The Court **DISMISSES as moot** Defendant's Motion for <u>Jackson-Denno</u> Hearing.[10] (Doc. 44.)

### CONCLUSION

For all of these reasons, the Court **GRANTS as unopposed** Defendant's Motion for Release of <u>Brady</u> Materials, (doc. 40), **DISMISSES as moot** Defendant's Motion for Jencks Act Material, (doc. 41), **DISMISSES as moot** Defendant's Motion to Preserve Evidence, (doc. 42), **GRANTS** Defendant's Motion for Discovery and Inspection, (doc. 43), and **DISMISSES as moot** Defendant's Motion for <u>Jackson-Denno</u> Hearing, (doc. 44).

**SO ORDERED**, this 23rd day of June, 2017.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[9] The Court imposes the fourteen-day deadline to avoid any further delay in this case. However, if it is impossible for the Government to meet this deadline, counsel for the Government and the Defendant should confer and come to the Court with a request to extend the deadline. It is the Court's hope and expectation that counsel will amicably arrange the logistics of this inspection without the need for the Court's intervention.

[10] <u>Jackson v. Denno</u>, 378 U.S. 368 (1964), governs the voluntariness of confessions. Defendant's counsel represented to the Court that this Motion should be dismissed as moot.